IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:08CV438-1
3:06CR74

| | |
|---|---|
| HOWELL W. WOLTZ, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | **O R D E R** |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |
| ) | |

**THIS MATTER** comes before the Court upon Petitioner's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255, (Doc. No. 1, cited hereafter as "Pet."), his motion seeking leave to amend the same, (Doc. No. 9), and the Government's motion for summary judgment, (Doc. No. 22), as well Petitioner's related motions, (Doc. Nos. 43, 44, 46, 48, 50, 52, 55).

## I. BACKGROUND

On April 4, 2006, Petitioner, his wife, attorney Ricky Edward Graves, and attorney Samuel Thomas Currin were indicted for various charges arising out of a tax scheme and related investigation, Case No. 3:06-CR-74. On January 29, 2007, a bill of information (which was superseded shortly thereafter) was filed against Petitioner for conspiring to commit money laundering offenses, Case No. 5:07-CR-3. After waiving indictment on the bill of information and entering into a plea agreement regarding the two criminal cases against Petitioner, on February 6, 2007, Petitioner pled guilty to conspiring to defraud the United States and to

conspiring to commit money laundering offenses.  On October 1, 2007, after allowing a four-level reduction in Petitioner's offense level on the Government's motion for departure, the undersigned sentenced Petitioner to the lowest end of the guideline range, a total term of imprisonment of 87 months.

On September 23, 2008, Petitioner filed the instant habeas motion.  On October 3, 2008, the Court directed the Government to file an answer to the motion.  On November 26, 2008, Petitioner filed a motion seeking leave to amend his habeas motion.  After receiving a number of extensions of time, on February 27, 2009, the Government timely filed its response to the habeas motion along with a motion for summary judgment.  On March 11, 2009, and in accordance with the Court's order, the Government filed a response to Petitioner's motion for leave to amend.  On March 27, 2009, Petitioner filed a response to the Government's response to his habeas motion.

In the meantime, Petitioner has filed various motions, namely for recusal and summary judgment, which the court has denied.  A number of other motions, however, remain pending.

## II.  DISCUSSION

**A.     Petitioner's Section 2255 Motion/Government's Motion for Summary Judgment**

Pursuant to the Rules Governing Section 2255 Proceedings, if a motion is not dismissed on initial review, as was the case here, "the judge must review the answer, any transcripts and records of prior proceedings, and any [additional] materials submitted . . . to determine whether an evidentiary hearing is warranted."  Rule 8(a).  A district court may dismiss a habeas motion without an evidentiary hearing when the pleadings and additional materials submitted by the parties conclusively show that a petitioner is not entitled to relief on any of his claims.  Raines v.

United States, 423 F.2d 526, 529 (4th Cir. 1970). Furthermore, summary judgment for the Government is appropriate when the pleadings and additional materials, viewed in the light most favorable to the petitioner, present no genuine issues of material fact that could lead a rational trier of fact to find that the petitioner is entitled to relief. See Rule 12 of Rules Governing § 2255 Proceedings (Federal Rules of Civil Procedure apply to habeas proceedings to the extent that they are not inconsistent with applicable statutes or the habeas rules); Blackledge v. Allison, 431 U.S. 63, 80-81 (1977) (summary judgment procedure may be used to test habeas corpus petition); United States ex rel. Owens v. First Kuwaiti Gen. Trading & Contracting Co., 612 F.3d 724, 728 (4th Cir. 2010) (setting forth familiar summary judgment standard under Fed. R. Civ. P. 56). With these standards in mind, the court will consider Petitioner's claims in turn.

*1. Breach of Contract*

The starting point for the court's analysis of the breach of plea agreement claim is contract law.

> The interpretation of plea agreements is guided by contract law, and parties to the agreement should receive the benefit of their bargain. Because a defendant's fundamental and constitutional rights are implicated when he is induced to plead guilty by reason of a plea agreement, our analysis of the plea agreement or a breach thereof is conducted with greater scrutiny than in a commercial contract.

United States v. McQueen, 108 F.3d 64, 66 (4th Cir. 1997) (footnotes omitted).

> "[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." "It is well-established that the interpretation of plea agreements is rooted in contract law, and that each party should receive the benefit of its bargain." "A central tenet of contract law is that no party is obligated to provide more than is specified in the agreement itself." "Accordingly, in enforcing plea agreements, the

3

> government is held only to those promises that it actually made," and "the government's duty in carrying out its obligations under a plea agreement is no greater than that of fidelity to the agreement."

United States v. Dawson, 587 F.3d 640, 645 (4th Cir. 2009) (citations omitted). The burden of proving the breach of the plea agreement by a preponderance of the evidence rests with Petitioner, as the party asserting breach. See United States v. Snow, 234 F.3d 187, 189 (4th Cir. 2000).

Petitioner contends that he made a "deal" with the Government early on, shortly after his and his co-defendant wife's arrests and bond hearing, with their agreement being memorialized in email correspondence. (Pet. at 7-8.) According to Petitioner, in return for his cooperation, he "was guaranteed:

1) The immediate release of his wife
2) No new charges of any kind
3) No forfeiture of assets by Petitioner or his companies[.]"

(Id. at 8 (footnote omitted).) In addition, Petitioner claims the prosecutor assured him that "he would only be given a 'small charge, with little or no time.'" (Id.) Petitioner points to three supposed breaches of this agreement by the Government: (1) failing to release his wife; (2) filing the money laundering charge against Petitioner; and (3) the fact that he received an 87-month term of imprisonment as part of his sentence. (See id. at 11-13.)

Other than the date on which the Court imposed his sentence, the events of which Petitioner complains occurred in 2006. It is evident from Petitioner's own documents that he had not in fact reached an agreement with the Government at that time. Rather, the parties were engaging in plea negotiations. (See Pet., Ex. 1.) The parties' agreement was not formalized until January 26, 2007, upon the parties' execution of the plea agreement. (See Case No. 3:06-

4

CR-74, Doc. No. 165.) In accordance with *that* agreement, (id. ¶ 15), upon acceptance of Petitioner's and his wife's guilty pleas, and on the motion of his wife for release from detention, on February 6, 2007, the Government stipulated that Petitioner's wife was neither a risk of flight nor danger to the community, whereupon the Court ordered her release on specified conditions, (id., Doc. No. 172, Doc. No. 301 at 46-47). Other than the charges to which Petitioner agreed to plead guilty, Petitioner has not been charged with any other crimes.[1] Finally, the term of imprisonment to which the Court sentenced Petitioner was clearly what he contemplated under the terms of the plea agreement. (See id. Doc. No. 165 ¶ 24a.)

Accordingly, the Court finds that the Government did not breach the terms of its plea agreement with Petitioner.

### 2. *Involuntariness of Plea*

Petitioner next claims that his guilty plea was not voluntary. It is significant to note that Petitioner does not take issue with his plea hearing, which the Court conducted in accordance with Fed. R. Crim. P. 11. At the hearing, the Court specifically questioned Petitioner about, among other things, whether anyone had promised him anything in order to get him to enter the plea of guilty. (Case No. 3:06-CR-74, Doc. No. 301 at 32; see also id. at 17, 38.) The Court expressly found that Petitioner's plea was freely and voluntarily entered. (Id., Doc. No. 301 at 46.)

Petitioner now argues that he was coerced into pleading guilty because his "family members" were being held hostage. (Pet. at 15.) The Court presumes Petitioner refers to the

---

[1]Although the bill of information was superseded after the parties' executed the plea agreement, it did not result in any new charges against Petitioner, and Petitioner pled guilty to the one count therein, (see Case No. 3:06-CR-74, Doc. No. 301 at 38-41, 44).

5

fact that the Government's consent to his co-defendant wife's release was contingent upon Petitioner's plea of guilty. Obviously, this part of the plea agreement was disclosed to Petitioner, and it is not an improper means of negotiating a plea, see United States v. DeFusco, 949 F.2d 114, 119 (4th Cir. 1991) (finding that even if the prosecution had expressly agreed to be lenient on the defendant's wife as a condition of defendant's plea, the plea was not rendered involuntary), cert. denied, 503 U.S. 997 (1992). More importantly, Petitioner's sworn statement at the plea hearing that he had not been promised anything in return for his plea is "strong evidence of the voluntariness of his plea." Id.

Additionally, Petitioner appears to contend that other circumstances render his plea involuntary, namely that: the Government selectively prosecuted him; the IRS and FBI conducted an illegal search of Petitioner's office to seize documents; Petitioner was subject to custodial interrogation in absence of his counsel; the assignment of Petitioner's criminal case to the undersigned was irregular; the Government tampered with evidence; and, Petitioner has been subjected to cruel and unusual punishment by being moved between various jails nineteen times. (Pet. at 16-21.) None of these issues implicate the voluntariness of Petitioner's plea. To the extent they could be deemed separate claims for habeas corpus relief, Petitioner has waived most of such claims under the terms of his plea agreement. The plea agreement provides in pertinent part that

> Defendant and defendant's counsel warrant that they have discussed: (1) defendant's rights pursuant to 18 U.S.C. § 3742, 28 U.S.C. § 2255, and similar authorities to contest a conviction and/or sentence through an appeal or post-conviction after entering into a plea agreement; (2) whether or not there are potential issues which might be relevant to an appeal or post-conviction action; and (3) the possible impact of any such issue on the desirability to the defendant of entering into this plea agreement.

6

> Defendant, in exchange for the concessions made by the United States in this plea agreement, waives all such rights to contest the conviction and/or the sentence except for: (1) claims of ineffective assistance of counsel; or (2) prosecutorial misconduct. . . .

(Case No. 3:06-CR-74, Doc. No. 165 ¶ 19.) Such a waiver of collateral attack rights, having been freely and voluntarily agreed to as a part of the plea agreement, is enforceable. See United States v. Lemaster, 403 F.3d 216, 220 (4th Cir. 2005) ("[W]e hold that a criminal defendant may waive his right to attack his conviction and sentence collaterally, so long as the waiver is knowing and voluntary.").

To the extent any claims could be characterized as prosecutorial misconduct and thus outside the scope of the plea agreement's collateral rights waiver, those claims are barred. The purported selective prosecution, improper custodial interrogation, and evidence tampering claims should have been raised, if at all, in a pretrial motion. See Fed. R. Crim. P. 12(b)(3) (a motion alleging a defect in instituting the prosecution and a motion to suppress evidence must be raised before trial); United States v. Edwards, 188 F.3d 230, 237 (4th Cir. 1999) (recognizing that "[a] claim of selective prosecution is a claim that there was a 'defect in the institution of the prosecution[,]'"(citation omitted), and must be raised before trial), cert. denied, 528 U.S. 1130 (2000). By failing to raise those grounds in a pretrial motion, Petitioner has waived them, see Fed. R. Crim. P. 12(e); Edwards, 188 F.3d at 237. Waiver may be excused only if Petitioner can show cause and actual prejudice or actual innocence, see Bousley v. United States, 523 U.S. 614, 622 (1998) ("Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either "cause" and actual "prejudice," or that he is "actually innocent." (citations omitted)), which he

cannot do.  Furthermore, Petitioner's valid guilty plea precludes him from advancing any antecedent, non-jurisdictional constitutional claims.  See Tollett v. Henderson, 411 U.S. 258, 266-67 (1973).  Accordingly, the court will not set aside Petitioner's plea nor his concomitant plea agreement.

*3. Judicial Misconduct*

Again, Petitioner takes issue with the assignment of his criminal case to the undersigned. Specifically, Petitioner claims that my purported bias against his co-defendant Samuel T. Currin deprived Petitioner of his right to a fair trial under the Fifth Amendment.  (Pet. at 22.)  Not only is this claim barred by Petitioner's collateral rights waiver, as discussed above, but also the issue of my alleged bias and impartiality has previously been addressed in connection with Petitioner's motion for recusal in this habeas corpus proceeding, his judicial complaint against me, and his petition for writ of mandamus, all of which confirm that Petitioner is not entitled to relief on this basis.  See In re Woltz, No. 08-2307, 2009 WL 1453479 (4th Cir. May 26, 2009); In the Matter of a Judicial Complaint Under 28 U.S.C. § 351, 04-08-90030 (4th Cir. July 7, 2008), review denied (4th Cir. Sept. 18, 2008) (Doc. No. 3, Exs. 2, 5); (Doc. No. 49).

In conjunction with his judicial misconduct claim, Petitioner claims that his rights to a speedy trial and to counsel were violated.  (Pet. at 23-30.)  To the extent these issues could be deemed claims separate from the claim of judicial misconduct, Petitioner has waived those claims under the terms of his plea agreement.  Also, any violation of the Speedy Trial Act is deemed waived by virtue of Petitioner's failing to file a motion to dismiss the indictment prior to the entry of his guilty plea.  See 18 U.S.C. § 3162(a)(2) ("Failure of the defendant to move for dismissal prior to trial or entry of a plea of guilty or nolo contendere shall constitute a waiver of

8

the right to dismissal under this section.").

   *4. Actual Innocence*

Petitioner's claim of actual innocence "focus[es] on the illegally added Superseding Bill of Information, which was exchanged for the release of Petitioner's wife." (Pet. at 31.) As previously noted, at the time of the execution of Petitioner's plea agreement, the Government filed a bill of information against Petitioner alleging one count of conspiracy to commit money laundering offenses in violation of 18 U.S.C. § 1956(h). Approximately one week later, on the date of Petitioner's plea, February 6, 2007, the Government filed a superseding information, which merely changed the allegations in one paragraph of the information. (Compare Case No. 5:07-CR-3, Doc. No. 1 ¶ 49 with Doc. No. 2 ¶ 49.)

At the outset, the court notes that, except in an extraordinary case, a claim of actual innocence without an underlying constitutional violation is not a basis for habeas corpus relief. See Buckner v. Polk, 453 F.3d 195, 199 (4th Cir. 2006) ("[T]he Supreme Court has strongly suggested that claims of actual innocence standing alone do not serve as an independent basis for habeas relief: 'Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding.'" Herrera v. Collins, 506 U.S. 390, 400 (1993). "Citing Herrera, in Rouse v. Lee, 339 F.3d 238, 255 (4th Cir.2003), this court noted that 'claims of actual innocence are not grounds for habeas relief even in a capital case.'"), cert. denied, 549 U.S. 1284 (2007). Rather, as recognized above, a showing of actual innocence excuses a defaulted constitutional claim. It appears Petitioner is asserting actual innocence as an independent basis for relief. Nonetheless, because the court has found he defaulted some of his

constitutional claims and out of an abundance of caution, the court will consider the merits of his actual innocence claim.

To show he is actually innocent, Petitioner must show by clear and convincing evidence that he did not conspire to commit money laundering. See United States v. Pettiford, 612 F.3d 270, 282 (4th Cir. 2010) ("To succeed on actual innocence grounds, however, 'a petitioner must demonstrate actual factual innocence of the offense of conviction, i.e., that petitioner did not commit the crime of which he was convicted; this standard is not satisfied by a showing that a petitioner is legally, but not factually, innocent.' Furthermore, the 'movant must show actual innocence by clear and convincing evidence.'" (citations omitted)). "To obtain a conviction for money laundering conspiracy under 18 U.S.C. § 1956(h), the Government must prove the following essential elements: (1) the existence of an agreement between two or more persons to commit one or more of the substantive money laundering offenses proscribed under 18 U.S.C § 1956(a) or § 1957; (2) that the defendant knew that the money laundering proceeds had been derived from an illegal activity; and (3) the defendant knowingly and voluntarily became part of the conspiracy." United States v. Green, 599 F.3d 360, 371 (4th Cir.) (citation omitted), cert. denied, No. 10-5735, ___ U.S. ___ (2010).

Petitioner's assertions of innocence are belied by his sworn statements at the plea hearing and the stipulations he made in support of his plea. (See Case No. 3:06-CR-74, Doc. No. 165, Ex. 1, Doc. No. 301 at 42, 43, 44-46.) Petitioner is bound by these statements. See Lemaster, 403 F.3d at 222-23 ("[I]n the absence of extraordinary circumstances, allegations in a § 2255 motion that directly contradict the petitioner's sworn statements made during a properly conducted Rule 11 colloquy are always 'palpably incredible' and 'patently frivolous or false.'. . .

10

Thus, in the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should, without holding an evidentiary hearing, dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements." (citations omitted)).  Petitioner is not entitled to relief on this basis.

Additionally, Petitioner could be denied relief on this ground because he has not shown he is also actually innocent of the charges the Government dismissed pursuant to the terms of the plea agreement, that is, perjury, obstruction of the due administration of justice, obstruction of an official proceeding, and conspiracy to commit obstruction offenses.  See Bousley, 523 U.S. at 624 ("In cases where the Government has forgone more serious charges in the course of plea bargaining, petitioner's showing of actual innocence must also extend to those charges.").

### 5. Ineffective Assistance of Counsel

The applicable legal standard for an ineffective assistance claim is well established. Under the principles of Strickland v. Washington, 466 U.S. 668 (1984):

> a meritorious ineffective assistance claim must demonstrate two things: first, that counsel's performance was deficient and, second, that counsel's deficient performance prejudiced the defense.  Under the second prong of *Strickland*'s test, there is a "strong presumption" that counsel's strategy and tactics fall "within the wide range of reasonable professional assistance."  For counsel's trial performance to be deficient, he must have "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," and that "counsel's representation fell below an objective standard of reasonableness."  To establish prejudice, a defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Under *Strickland,* a reasonable probability is a "probability sufficient to undermine confidence in the outcome."

Burch v. Corcoran, 273 F.3d 577, 588 (4th Cir. 2001) (citations omitted), cert. denied, 535 U.S. 110 (2002). In the guilty plea context, to demonstrate prejudice, the petitioner must show that but for counsel's errors, he would have insisted on going to trial. Hill v. Lockhart, 474 U.S. 52, 59 (1985).

With respect to his initial counsel, David Freedman, Petitioner complains that Freedman lied to him about striking an agreement with the Government and failed to file various motions, among other things. (Pet. at 39-40.) However, even assuming Freedman's representation was deficient, Petitioner cannot show he was prejudiced thereby. Freedman only represented Petitioner until mid-September 2006. Petitioner's new counsel, Tolly Kennon, immediately filed motions for extension of time to file pretrial motions and to continue the trial, which the Court allowed, giving Petitioner an additional three-and-one half months to file pretrial motions and continuing the trial for approximately the same length of time. Freedman's errors, if any, did not in any way prevent Petitioner from insisting on going to trial.

As for Petitioner's subsequent counsel, Matthew Hoefling,[2] Petitioner voices many of the same complaints he has against Freedman. (Pet. at 40.) In addition, he claims Hoefling erred by allowing the Government to "add" the superseding bill of information and failing to file a motion to dismiss it. (Id. at 41, 43.) The Court finds that Hoefling's performance was not deficient under Strickland.

First, Hoefling *did* file a number of pretrial motions, including motions to dismiss all charges then-pending against Petitioner as well as a motion for reconsideration of Petitioner's detention. These filings evidence that Hoefling investigated Petitioner's case.

---

[2] Hoefling entered his appearance on October 4, 2006 and served as Petitioner's co-counsel with Kennon for a period of time.

Second, there is nothing legally incorrect about the timing of the Government's filing of the superseding bill of information. Contrary to Petitioner's suggestion, (Pet. at 41-42; see also Doc. No. 30 at 18), the superseding bill of information did not "add" to the indictment. Rather, it "added" to the original bill of information. No violation of 18 U.S.C. § 3161(b) occurred. That statute, as part of the Speedy Trial Act, requires that any information or indictment charging an offense be filed within 30 days of the defendant's arrest or service with summons "in connection with such charges." 18 U.S.C. § 3161(b). As the Seventh Circuit Court of Appeals has recognized:

> Several circuits have [] held that superseding indictments filed longer than thirty days after an arrest which add charges to those contained in the original indictment do not violate the Speedy Trial Act.
> . . . . "'The Speedy Trial Act does not guarantee that an arrested individual indicted within thirty days of his arrest must, in that thirty-day period, be indicted for every crime known to the government, failing which he may never be charged. In short, the Speedy Trial Act is not a statute of limitations.'"

United States v. Hemmings, 258 F.3d 587, 582 (7th Cir. 2001) (citations omitted). Here, Petitioner was arrested on a bill of indictment. Although the bill of information was filed (and superseded) more than 30 days after his arrest on the bill of indictment, the Speedy Trial Act was not violated because the bill of information charged a crime different from that charged in the bill of indictment. See id. Thus, Hoefling had no basis for filing a motion to dismiss the superseding bill of information.

Finally, and most importantly, at his plea hearing and under oath, Petitioner expressed his satisfaction with Hoefling's representation:

> The Court:   Mr. Woltz, have you had plenty of time and opportunities to go over this with your lawyers:

13

> Defendant Mr. Woltz: Yes, I have.
> The Court: Are you totally and completely satisfied with the services that they have rendered you?
> The Defendant: Of the current lawyers, yes.
> The Court: Well, I always ask this question of every person. I am required to make sure that they are satisfied, and I am particularly concerned with you because I know you have had some dissatisfaction with earlier counsel.
> Defendant Mr. Woltz: Yes, sir.
> The Court: So I want to stress to you the importance that if you have any dissatisfaction with the lawyers that you have now retained that you bring that to my attention. It's critical that you do it now rather than let it wait to some future time.
> Defendant Mr. Woltz: Yes, sir.
> The Court: You are satisfied with their services?
> Defendant Mr. Woltz: Yes. Yes, I am.

(Case No. 3:06-CR-74, Doc. No. 301 at 14-15.) Petitioner will be held to these representations. See Fields v. Attorney Gen. of Md., 956 F.2d 1290, 1299 (4th Cir.) (during the plea colloquy where the defendant volunteered under oath that he was "very pleased with my counsel," finding defendant is bound by the representation absent clear and convincing evidence otherwise), cert. denied, 506 U.S. 885 (1992). Petitioner has failed to establish ineffective assistance of counsel to warrant habeas corpus relief.

In sum, Petitioner has not shown he is entitled to habeas corpus relief on any basis and the Government is entitled to judgment in its favor.

### B. Petitioner's Motion to Amend

Petitioner seeks leave to amend his § 2255 motion to assert a claim or argument based on United States v. Santos, 553 U.S. 507 (2008). In that case, the Court held in a plurality opinion that "proceeds" under the money laundering statute, 18 U.S.C. § 1956(a)(1), means "profits," that is, "what remains after expenses are paid." Santos, 553 U.S. at 517.

The motion to amend is governed by Rule 15 of the Federal Rules of Civil Procedure.

See Mayle v. Felix, 545 U.S. 644, 655 (2005); United States v. Pittman, 209 F.3d 314, 317 (4th Cir. 2000).

> Under Rule 15(a) leave to amend shall be given freely, absent bad faith, undue prejudice to the opposing party, or futility of amendment. Where the statute of limitations bars a cause of action, amendment may be futile and therefore can be denied.
> When proposed claims in an amendment are barred by the statute of limitations, Rule 15(c) provides for the relation back of amendments to the original pleading under certain circumstances. Relation back is permitted when "the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth . . . in the original pleading."

Pittman, 209 F.3d at 317 (citations omitted).

Amendment to Petitioner's motion would be futile. The applicable statute limitations bars any new claim based on Santos. Section 2255(f) contains a one-year limitations period. Petitioner's judgment was entered October 15, 2007. Because he did not appeal, his judgment became final ten days later, or on October 29, 2007. See Clay v. United States, 537 U.S. 522, 524-25 (2003) (conviction becomes final after time period to appeal or seek review has concluded); Fed. R. App. P. 4(b)(1)(A) (2007) (ten-day period to appeal criminal judgment); Fed. R. App. P. 26(a) (2007) (with time periods shorter than ten days, weekends and holidays do not count in the calculation).[3] Petitioner had one year from that date to assert any claim under § 2255.[4] See 28 U.S.C. § 2255(f)(1). Having filed the motion to amend on November 26, 2008,

---

[3] Since entry of the judgment here, the cited rules have been amended. The appeal period is now fourteen days, Fed. R. App. P. 4(b)(1)(A) (2009), and weekends and holidays are now included in the time period calculation, id. 26(a)(1)(B) (2009).

[4] The one year period does not begin running from the date of the Santos decision, June 2, 2008. The one year statute of limitations may run from "the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." 28 U.S.C. § 2255(f)(3). However, the holding in Santos does not rise to the level of a "watershed rule" to be applied retroactively to cases on collateral review. Vaughan v. United States, No.
(continued...)

15

any claim is untimely unless it relates back to the original § 2255 motion. The claim or argument Petitioner asserts under Santos does not relate to his original claims. In fact, Petitioner could have included any claim based on Santos in his original motion.

Petitioner's proposed amendment is also futile because, for the reasons set forth in the previous section, he has waived any claim based on Santos. Accordingly, the Court will deny Petitioner's motion to amend.

### C. Petitioner's Remaining Motions

Petitioner has filed two motions for writ of scire facias. (Doc. Nos. 43, 44.) The motions appear identical except for the letters attached to each. Petitioner requests that his judgment be vacated and, in support, makes many of the same arguments, albeit in abbreviated form, that he makes in his § 2255 motion. Writs of scire facias have been abolished. Fed. R. Civ. P. 81(b). Because the Court has considered the substance of Petitioner's arguments in conjunction with his § 2255 motion, the motions for writ of scire facias will be denied as moot.

In addition, Petitioner has moved for entry of default judgment against the Government for its failure to respond to his motion for summary judgment, among others. (Doc. No. 46.) The Government is not required to respond to any motion unless so ordered by the Court. Of course, it is free to timely respond to any motion, even in the absence of court order. However, the Government's failure to respond in any event does not automatically entitle Petitioner to relief. The motion for default judgment will be denied.

Petitioner then moves to alter or amend the Court's January 7, 2010 order, wherein the Court denied a number of Petitioner's motions. (Doc. No. 48.) Having determined that

---

⁴(...continued)
3:08CV330, 2008 WL 2945449, *3 (W.D.N.C. July 25, 2008).

Petitioner is not entitled to relief under § 2255, the issues Petitioner raises are largely moot, and the motion to alter or amend will be denied.

Petitioner also moves to alter or amend the Court's January 20, 2010 order, wherein the Court denied Petitioner's request for recusal and motion for summary judgment regarding recusal. (Doc. No. 52.) Petitioner raises the same arguments he has previously regarding the assignment of his case to me and my supposed bias and partiality. The Court will not reconsider its earlier ruling on recusal.

To the extent that Petitioner's "Request for Clarification of Legal Basis Upon Which Court Action(s) are Made," (Doc. No. 50), and "Notice of Motion for Rule 11(c) Sanctions Being Sent to Government and Counsel," (Doc. No. 55), could be deemed motions, they will be denied.

### III. CONCLUSION

**THEREFORE, IT IS HEREBY ORDERED that:**

1. Petitioner's Motion to Vacate, Set-Aside or Correct Sentence (Doc. No. 1) is **DISMISSED**;

2. Petitioner's Motion Seeking Leave to Amend § 2255 Petition (Doc. No. 9) is **DENIED**;

3. Government's Motion for Summary Judgment (Doc. No. 22) is **ALLOWED**;

4. Petitioner's Motions for Writs of Scire Facias (Doc. Nos. 43, 44) are **DENIED**;

5. Petitioner's Motion for Default Judgment (Doc. No. 46) is **DENIED**;

6. Petitioner's Motions to Alter or Amend Judgment (Doc. Nos. 48, 53) are **DENIED**;

7. Petitioner's Request for Clarification (Doc. No. 50) is **DENIED**; and

8.  Petitioner's Notice of Motion for Rule 11(c) Sanctions is **DENIED**.

The court finds that Petitioner has not made "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Pursuant to Rule 11(a) of the Rules Governing Section 2255 Proceedings, a certificate of appealability is DENIED.

The Clerk is DIRECTED to enter judgment and close this case.

This 8 November 2010.

                                                      W. Earl Britt
                                                      Senior U.S. District Judge